

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
*MIAMI DIVISION*

FILED by _____ D.C.
INTAKE

MAR 1 6 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

CASE NO. 0 7 - 2 0 7 0 2

**CIV-LENARD**

MARK STEPHEN GOLD,

    Plaintiff,

v.

    *7* TORRES

THE FLORIDA BAR and
ELIZABETH CLARK TARBERT,

    Defendant.

_____ /

## COMPLAINT AND DEMAND FOR JURY TRIAL

    The Plaintiff, Mark Stephen Gold ("Gold"), sues the Defendants, The Florida Bar ("The Florida Bar") and Elizabeth Clark Tarbert, individually ("Tarbert") (together, The Florida Bar and Tarbert shall be referred to as "Defendants") and states:

### I.    Nature of The Action

    1.    This is an action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1988 and 28 U.S.C. §2201.  Gold sues the Defendants seeking an injunction prohibiting the selective enforcement against Gold of The Florida Bar's rules pertaining to attorney advertising and seeking a declaratory judgment that The Florida Bar's application of its rules as to Gold is unconstitutional, in violation of the First and Fourteenth Amendments to the Constitution of the United States.

### II.    Jurisdiction

    2.    This case arises under the Constitution and the laws of the United States.

3.    This Court has jurisdiction pursuant to 28 U.S.C. 1331 and 1343(3).

### III.    The Parties

4.    Gold is an attorney admitted to practice law in the State of Florida. He is a member in good standing of The Florida Bar. He founded a law firm named "The Ticket Clinic" in 1987 and has practiced law at The Ticket Clinic since that time. The Ticket Clinic is a law firm that concentrates on representing clients in connection with defense of traffic tickets and D.U.I. arrests.

5.    The Florida Bar is an official arm of the Supreme Court of Florida. The purpose of The Florida Bar is to "inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence." Rules Regulating The Florida Bar, Rule 1-2. Pursuant to the Orders of the Supreme Court of Florida, The Florida Bar, through its board of governors, grievance committees and referees, initiates, administers and enforces discipline upon members of The Florida Bar, subject to the ultimate supervision and review of the Supreme Court of Florida. Among its responsibilities, The Florida Bar is charged with reviewing attorney advertising for compliance with the applicable ethical Rules.

6.    Tarbert is Ethics Counsel for The Florida Bar. In this capacity, she has reviewed advertisements submitted by Gold, rendered opinions concerning such advertisements, and under the guise of her performance of such duties, has engaged in a personal vendetta against Gold, as more fully articulated below.

7.    The Florida Bar and Tarbert have at all times hereinafter mentioned, operated under color of state law, regulation, custom and usage.

### IV.    **Factual Background**

#### *A.    The Florida Bar's Procedures for Supervision of Attorney Advertising*

8.    Section 4-7 of the Rules Regulating The Florida Bar governs attorney advertising of legal services.   Rule 4-7.7, entitled "Evaluation of Advertisements," requires review of proposed advertisements by The Florida Bar's standing committee on advertising, prior to or concurrent with the attorney's first use of such advertisement.  To that end, Rule 4-7.7 states in pertinent part:

> [A]ny lawyer who advertises services through any public media or through written communications sent in compliance with rule 4-7.4 or 4-7.6(c) shall file a copy of each such advertisement with the standing committee on advertising for evaluation of compliance with these rules.

9.    To insure that attorneys submitting advertisements for review are treated fairly and equitably, The Florida Bar has a system for reviewing such advertisements and has put in place a set of internal procedures (the "Distribution Procedures") governing the opening and assigning of new advertising files.  *See* relevant Distribution Procedures attached hereto as Exhibit A.

10.    Upon information and belief, The Florida Bar employs a largely random distribution procedure for new advertising files submitted by attorneys.   To that end, the Distribution Procedures include a procedure entitled "Distributing Ad Files & Adding to the Tracking Records," which provides in pertinent part:

> To determine who you are assigning the file to, check the Ad File Distribution List to see who is due to receive the next file.

11.    Revisions of previously filed ads are not assigned randomly.  Instead, The Florida Bar's Distribution Procedures provide that such ads are to be reviewed by the attorney who

reviewed the original advertisement.   Specifically,   a procedure entitled "Advertising Files"
provides in pertinent part:

> When support staff receives a revision of a previously filed ad,
> they assign the file to the attorney who performed the initial review
> (if the attorney is still here) and indicate Revision on the yellow
> cover sheet.

### B.   *Gold Adheres to the Procedures; The Florida Bar Does Not*

12.    Gold generates a significant portion of the Ticket Clinic's business through
advertising.   In doing so, Gold has assiduously followed The Florida Bar's procedures for
submission of advertisements for review and approval by The Florida Bar.  The Florida Bar, on
the other hand, fails and refuses to follow its own procedures, and instead has developed special
procedures for the review of Gold's advertising and the selective enforcement against him of The
Florida Bar's advertising rules.

13.    From 1991 until recently, Gold distributed advertisements in materially the same
form -- an envelope with three enclosures. The envelope includes (a) the name of Gold's law
firm, The Ticket Clinic, (b) the slogan "Don't Just Roll Over Fight Back," and (c) an image of a
road sign and a stop sign (hereinafter referred to, collectively, as the "Envelope Content").

14.    The three enclosures are copies of newspaper articles concerning The Ticket
Clinic that were previously published by *The Miami Herald* and *Fort Lauderdale Sun Sentinel*
(hereinafter referred to as the "Newspaper Articles.").   A copy of the Newspaper Articles
together with the Envelope Content are attached hereto as Composite Exhibit B. The Newspaper
Articles were not solicited, written, paid for, or otherwise procured by Gold or by anyone else on
his behalf.

15.    Gold arrived at the form of his advertisements by way of and in reliance upon a
series of advisory opinions issued by The Florida Bar, as summarized below:

(a)     Fl. Bar File No. 92-70,544(11D):   In early 1991, Gold filed a disciplinary complaint with The Florida Bar against attorneys Randy S. Maultasch ("Maultasch") and Robert D. Orshan ("Orshan"), charging violation of Rules including Rule 4-7.4(k) (which prohibits attorney mailings which reflect the nature of the recipient's legal problem).[1]   Those lawyers operated a Florida law firm named "The Ticket Defense Team" which, like the Ticket Clinic, concentrated in traffic ticket defense work and which, like the Ticket Clinic, advertised through direct mailings to individuals who received traffic citations.   Gold specifically challenged the lawyers' use of a direct mailing which included on the outside of the material (a) the trade name "Ticket Defense Team," and (b) the slogan "Now You Can Fight Back."   The Florida Bar entered a finding of no probable cause – which Gold interpreted to mean that such uses of direct mailings do not violate the prohibition on revealing the nature of a client's legal problem. Accordingly, in reliance on this finding, Gold then started to use similar envelope content in his direct mail advertisements.

(b)     Fl. Bar File No. 92-50,110 (17G):   In August 1991, The Florida Bar opened a disciplinary file regarding Gold's distribution of a direct mail advertisement, and considered (a) whether Gold's use of its trade name and Ticket Clinic Logo on the outside of its mailing revealed the nature of the recipient's legal problem in violation of Rule 4-7.4(b)(2)(K) (despite its prior finding that such use by Gold's competitor, Maultasch, was proper); and (b) whether the content of the direct mail advertisement violated The Florida Bar's ethical rules. After an exhaustive hearing, the grievance committee found no probable cause.

---

[1] Rule 4-7.4(k) is now Rule 4-7.4(b)(2)(K), which states:

> A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client's legal problem.

(c)    Fl. Bar File No. 95-51,266(17H):   In 1995, The Florida Bar opened a disciplinary file in response to a complaint filed by Maultasch regarding Gold's quotation of certain newspaper articles in a radio advertisement for The Ticket Clinic.   The Florida Bar determined that Gold's conduct was not unethical and, by letter dated December 27, 1995, specifically stated as follows:

> "After strictly construing the applicable rules and considering [Plaintiff's opposition to the complaint], the grievance committee reluctantly concluded that merely repeating statements about The Ticket Clinic made by other public news media did not fall within the conduct proscribed by the advertising rules."

(d)    Fl. Bar File Nos. 97/51,572(17D) and 97/51,894(17D):   In 1997, The Florida Bar opened two separate disciplinary files in response to two complaints regarding Gold's distribution of direct mail advertising.   Specifically at issue in these proceedings were: (a) whether Gold's use of its trade name and other material outside of its mailing revealed the nature of the recipient's legal problem in violation of Rule 4-7.4(b)(2)(K) (the same argument made – and rejected – back in 1991); and (b) whether content of the advertisement violated Florida Bar Rules prohibiting the use of testimonials.   On February 18, 1998, the grievance committee found no probable cause, finding that reprinting newspaper articles which had not been purchased by Gold did not violate The Florida Bar's ethical rules.

(e)    Fl. Bar. File No. 97/70,474 (17C):   In January 1997, The Florida Bar again opened a disciplinary file concerning Gold's use of the same advertisement, considering: (a) whether use of newspaper articles violated the Rules by creating unjustified expectations concerning representation; and (b) (for the fourth time) whether Gold's envelope disclosed the nature of the recipient's problems in violation of Rule 4-7.4(b)(2)(K).   As with the several prior instances in which the Advertisement was reviewed by The Florida Bar, no disciplinary action

was taken.

(f)     Fl. Bar File No. 98-71,520 (17D):   In December 1998, The Florida Bar *again* considered the propriety of Gold's envelope and the grievance committee dismissed yet another complaint, making the following express finding:

> "[T]he grievance committee found that the specific language contained on the outside of your self-sealing pamphlet does *not* reveal that the recipient has received a traffic ticket. The grievance committee based this determination on the fact that many citizens regularly receive unsolicited 'junk' mail which does not reflect any specific knowledge of the recipient, or his/her particular life situation. As an example, teenagers may receive advertising mail about Medicare supplemental insurance coverage, non-drivers may receive advertising mail about car insurance, and men may receive advertising mail about women's health care facilities.   In the grievance committee's studied opinion, the outside of your advertising mailing pamphlet does not reveal that [the recipient] received a traffic ticket."

(g)     Fl. Bar File No. 99-71,153 (11M):   In 1999, The Florida Bar *again* considered whether Gold's envelope violated Rule 4-7.4(b)(2)(K).   Again, the complaint was dismissed.

### C.     *Bar Files Disciplinary Proceeding Against Gold*

16.     In reliance on this series of events and The Florida Bar's actions with respect thereto, Gold continued his use of his advertisements in substantially the same form discussed above.

17.     Much to his surprise, in July 2003, another complaint was filed with The Florida Bar concerning Gold's standard advertisement.   Notwithstanding the fact that on no less than seven previous occasions, The Florida Bar reviewed and approved the same advertisement, this time, The Florida Bar found probable cause and filed a complaint against Gold, alleging, *inter alia,* that the statements in the advertisements violated Rules 4-7.2(b)(1)(B), 4-7.4(b)(1)(E), 4-

7.2(b)(3), 4-7.3(b) and 4-7.4(b)(2)(k) of the Rules Regulating The Florida Bar. *See The Florida Bar v. Mark Stephen Gold*, Case No. SC04-1661.

18.     From the beginning, Gold believed he was being singled out for unfair treatment by The Florida Bar, and that the advertising rules were being selectively enforced against him.

19.     The referee assigned to the case, Judge Victoria Platzer, appeared to agree.  She granted summary judgment in Gold's favor on June 9, 2005.  Indeed, The Florida Bar's case seemed so meritless to Judge Platzer that at one point she stated:

> It just seems like the most ridiculous complaint.  It smacks of just trying to find something . . . . It just seems to me that they're just trying to find something to pin on Mr. Gold . . . . I don't think he did anything wrong here.

20.     The Florida Supreme Court affirmed the Referee's ruling in part, specifically finding that  Gold's envelope did not violate Rule 4-7.4(b)(2)(K).  *See The Florida Bar v. Gold*, 937 So. 2d 652 (Fla. 2006) ("*Gold I*").

21.     Elizabeth Tarbert was listed as the primary witness for the Florida Bar's case against Mr. Gold in *Gold I*.  *See* Florida Bar's Witness list dated April 1, 2005, attached hereto as Exhibit C.

### D.     *The Harassment Continues*

22.     During the pendency of *Gold I* – at the time Tarbert was listed as the primary witness against Gold in that disciplinary proceeding – and even after the Florida Supreme Court issued its August 2006 opinion which largely vindicated Gold, The Florida Bar, and specifically, Tarbert, intensified their efforts to "find something to pin on" Gold.

23.     Specifically, The Florida Bar and Tarbert began to flyspeck Gold's advertisements, and selectively enforcing advertising rules against him in a way far different than Defendants applied the rules to other attorneys, including Gold's competitors.

24.     Tarbert went so far as to overrule favorable decisions rendered by her Florida Bar staff attorney colleagues, including Joy Bruner, Cynthia Booth, Barbara Moore, Kathy Bible and Arne Vanstrum, by re-reviewing Gold advertisements these attorneys had previously approved, and rejecting virtually identical advertisements – despite Tarbert's complete lack of authority to do so.

25.     For example, file no. 05-02287 related to a revision to a previous yellow pages advertisement submitted by Gold that contained a "money back guarantee" and used the words "you have my guarantee" – both of which had previously been reviewed and approved by Kathy Bible (file No. 04-01971) and Arne Vanstrum (file no. 04-02267). When Gold submitted a non-material revision of the advertisement, he sent it to Kathy Bible, who had reviewed the original advertisement. Indeed, pursuant to The Florida Bar's Distribution Procedures quoted above, Bible was the attorney who was required to review the revision, since she is the attorney that reviewed the original advertisement.

26.     Yet despite having submitted the revision to Bible, Gold was shocked to learn that Tarbert, not Bible, reviewed the revision for compliance with the advertising rules. On April 21, 2005, Tarbert issued her opinion essentially overruling the previous approvals of the advertisement in question and finding the money back guarantee and the words "you have my guarantee" to be in violation of the advertising rules. No explanation was given for why Bible did not perform the review, and to date, there has been no explanation why Tarbert would be assigned the duty of reviewing such a revision. In fact, Tarbert's continued involvement in *any* review of Gold's advertisement would appear to be a conflict of interest, given Tarbert's deep involvement in *Gold I*. Nevertheless, Tarbert continues to review – and reject – Gold's advertising, notwithstanding her colleagues' prior review and approval of similar advertisements.

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 201 SO. BISCAYNE BLVD., SUITE 1700, MIAMI, FL 33131  305.379.9000

27.     A similar situation occurred with respect to file no. 05-02295. In that case, Gold submitted a revision to a previous ad, which contains the words "We believe almost any case can be won." This phrase had been reviewed – and approved – in the context of previous Gold advertisements, including yellow page advertisements, radio advertisements and direct mail advertisements. *See* file no. 05-01354 (Bruner approving language "We believe almost any case can be won") and file no. 05-01834 (radio ad approved by Booth including the language "We believe almost any case can be won"). No explanation was given for the conflicting opinions or for why Tarbert was reviewing Gold advertisements at the same time she was listed as a witness against him in *Gold I*.

28.     As it turns out, Tarbert appears to have made it her personal mission to review – and reject – every advertisement Gold submits to The Florida Bar for review. To that end, on June 16, 2006, Tarbert circulated an email within her group demanding that "ALL Mark Gold ads" be forwarded to her for review, "even if they are revisions handled by another staff attorney." *See* email attached hereto as Exhibit D. Such instructions stand in stark contradiction to the Distribution Procedures established by The Florida Bar and quoted above, and appear to serve no legitimate purpose other than to allow Tarbert to continue to pursue what is clearly a retaliatory campaign against Mark Gold.

29.     Since the time the June 16 email was circulated, Tarbert has continued to review – and reject – all advertisements submitted by Gold, including those previously approved by other Florida Bar attorneys. For example, In June, 2006, Gold submitted a brochure (file no. 06-02399) in a form virtually identical to an advertisement previously reviewed and approved – twice – by Joy Bruner. *See* Bruner letter dated May 17, 2004, attached hereto as Exhibit E and Bruner letter dated April 25, 2005 (file no. 05-01354), attached hereto as Exhibit F. The only

difference between the advertisement submitted by Gold in June and the previous iterations of such advertisement approved by Bruner was the inclusion of a reference to a credit coupon. In light of the fact that everything else in the advertisement had already been approved, the only issue that should have been reviewed was the propriety of the reference to the credit coupon issue.

30.      Moreover, pursuant to the Distribution Procedures, the advertisement should have been forwarded to Bruner for re-review. Instead, Tarbert reviewed the advertisement, and on June 16, 2006, issued a four-page advisory opinion stating that the revision did not comply with the advertising rules. *See* June 16, 2006 letter, attached hereto as Exhibit G. Tarbert even acknowledges that her opinion contradicts that made in previous reviews, stating: "I understand that most of these issues were not addressed in bar staff's letters to you regarding files 06-00379 and 05-01354 regarding similar advertisements. I apologize for Ms. Bruner's failure to point out those issues."

31.      Tarbert goes on to state a myriad of alleged deficiencies in the previously-approved advertisement. First, she claims that the language in the advertisement stating "FROM $5" violates Rule 4-7.2(b)(1)(A).[2] The use of the $5 language had already been approved by Bruner. Nevertheless, in her re-review of the advertisement, Tarbert states that the language is precluded "unless you handle a substantial number of cases for $5." *See* June 16, 2006 letter at ¶ 2.

---

[2] Rule 4-7.2(b)(1)(A) provides in relevant part:

> A lawyer shall not make or permit to be made a false, misleading, deceptive or unfair communication about the lawyer or the lawyer's services. A communication violates this rule if it . . . contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading.

32.     Gold has informed Tarbert, in writing, that of the 64 non-moving violations on The Ticket Clinic's price list, 33 of such violations cost $5 for representation.[3]  Certainly, 33 of 64 violations is a "substantial number."  Moreover, other attorneys' advertisements containing the "$5" language have been approved by The Florida Bar, with no apparent concern for the requirement that "a substantial number" of such cases be handled, and despite the fact that such advertisements do not distinguish between moving and non-moving violations – which Gold's advertisement does.

33.     Tarbert also claimed that Gold's "money back guarantee" language was misleading and deceptive – despite the fact that similar guarantees, such as a competitor's "no hassles" guarantee, continue to be approved, and despite the fact that, as discussed above, the same "money back guarantee" language had previously been approved by Bruner (file no. 05-01354), Bible (file no. 04-01971) and Vanstrum (file no. 04-02267).

34.     Simply stated, Gold's advertisement, and his guarantee are not deceptive or misleading, as evidenced by The Florida Bar's previous opinions regarding the advertisement and advertisements of Gold's competitors.  The language used by Gold states, clearly and unequivocally, that the "Guarantee is limited, some restrictions apply, call for details." There is absolutely nothing misleading about the advertisement, yet Tarbert, in her continuing efforts to antagonize and single out Gold, opines that it is not in compliance with the advertising rules.

---

[3] In a letter dated February 6, 2007, Tarbert requested that Gold submit his price list to the Standing Committee and a list of the 33 non-moving violations for which representation will be provided at a price of $5. Although Gold complied with Tarbert's request and submitted the requested information, he rightly inquired as to why no such information had been requested of his competitors prior to approval of their advertisements. Again, this request illustrates how The Florida Bar, and specifically, Tarbert, have singled Gold out for selective enforcement of the advertising restrictions, in violation of his constitutional rights.

35.     More importantly, the guarantee language Gold uses was not only previously approved by Tarbert's colleagues, Bruner, Kathy Bible and Arne Vanstrum, such language was in fact *recommended* by Assistant Ethics Counsel Cynthia Booth.

36.     A similarly egregious example of Tarbert's continuing retaliation against Gold relates to a revision of a radio advertisement that was previously reviewed and approved – twice -- by The Florida Bar.  The advertisement was first submitted, in a 60-second format, on February 8, 2005.  *See* transmittal letter and advertisement, attached hereto as Exhibit H.  The advertisement was approved by staff attorney Cynthia Booth.  Gold subsequently submitted 30-second and 15-second versions of the same radio advertisement – which simply deleted material included in the 60-second version – and both were again approved by Ms. Booth on April 21, 2005.  *See* letter from Ms. Booth confirming approval of all prior submissions of radio advertisement.

37.     On August 1, 2006, Gold submitted revised 30-second versions of the original ad. *See* August 1 transmittal letter and attached advertisement, attached hereto as Exhibit I. Everything in the August 1 advertisement had previously been reviewed – and approved -- as part of the original 60-second ad, the 30-second revision, the 15-second revision, or all of the above.

38.     Nevertheless, and notwithstanding the multiple previous approvals of every single sentence contained in the advertisement, on August 14, 2006, Ms. Tarbert issued an opinion stating that the 30-second ad was not in compliance with The Florida Bar's advertising rules. *See* August 14, 2006 letter, attached hereto as Exhibit J.  Again, Ms. Tarbert unabashedly acknowledged The Florida Bar's previous approvals of the advertisement, stating "I realize that

bar staff failed to point out these issues to you in your prior submissions; I apologize for that oversight."

39.     It is obvious and unmistakable that Tarbert is biased against Gold.  In light of this bias, Gold has requested, in writing, that Tarbert be removed from his advertising files so that he may receive the fair, equal and impartial treatment to which he is entitled.  *See* Letters dated January 16, 2007 and January 22, 2007, attached hereto as Exhibit K.  The Florida Bar has failed and refused to remove Tarbert, and she continues to review, and reject, Gold's advertisements.

40.     The Florida Bar's and Tarbert's witch hunt against Gold and their selective enforcement of the advertising restrictions against him violates his rights under the First and Fourteenth Amendments to the Constitution of the United States.

41.     Gold wishes to continue to use advertisements for his law firm The Ticket Clinic, and believes that such advertisements will be reviewed, and rejected, by The Florida Bar and Tarbert, based upon a selective enforcement of the advertising rules.

42.     Therefore, an actual controversy exists between the parties.

43.     All conditions precedent to the institution of this action have occurred, been performed, or have been waived or excused.

## V.     Claim for Relief Under 42 U.S.C. §1983

44.     The actions of the Defendants in selectively enforcing, against Gold, the advertising restrictions contained in the Rules Regulating The Florida Bar violate the First and Fourteenth Amendments to the Constitution of the United States and deprive Gold of equal protection and due process of law.

45.     The actions of the Defendants in selectively enforcing against Gold the advertising restrictions contained in the Rules Regulating The Florida Bar enumerated above

deprive Gold of rights, privileges and immunities under color of state law in violation of 42 U.S.C. §1983.

46.     There is between the parties an actual controversy requiring adjudication by this Court. The actions of the Defendants constitute an irreparable injury to Gold which cannot be redressed by any remedy other than this action for declaratory and injunctive relief.

**WHEREFORE,** Gold respectfully requests that this Court assume jurisdiction of this cause, and enter an Order:

- Declaring that The Florida Bar's and Tarbert's actions constitute selective enforcement against Gold of the advertising restrictions contained in the Rules Regulating The Florida Bar, in violation of the First and Fourteenth Amendments to the United States Constitution.

- Enjoining any further selective enforcement of the advertising restrictions against Gold;

- Requiring the Florida Bar to adhere to the following procedures with respect to Mark Gold's advertisement submissions:

  - ➢ Elizabeth Tarbert is to be precluded from reviewing, or participating in any manner in the review of, any of Mark Gold's advertisement submissions, in light of her obvious conflict of interest and the bias she has exhibited against Gold;

  - ➢ All new advertisement submissions by Mr. Gold are to be randomly assigned among the reviewing attorneys (other than Ms. Tarbert);

  - ➢ Revisions to previous submissions are to be reviewed by the attorney that reviewed the original submission, and such review is to be rendered consistent with the opinions rendered concerning the previous submissions.

- Awarding Gold his reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988, and such other relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Gold demands trial by jury for all issues so triable as a matter of law.

Dated:  March⟍⟋⟍ , 2007.

Respectfully submitted,

**KLUGER, PERETZ, KAPLAN & BERLIN, P.L.**
*Attorneys for Plaintiff Mark Stephen Gold*
Miami Center, Suite 1700
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428

By: _____
    Alan J. Kluger
    Florida Bar No. 200379
    Dianne Olivia Fischer
    Florida Bar No. 994560

Name_of_Procedure:[ Distributing Ad Files & Adding to the Tracking Records
]
    Type_of_Procedure:[ Advertising
Time/Task_Allocation_No.:[ File Review / Prep 222
  Creator:[ Rebecca Burke                    ]      Date:[ 6/9/99                    ]
      Staff_Responsible:[ Administrative Secretary I
]
Description:[ Once the advertising files have been opened, they must be distributed to the
attorneys for review and recorded for tracking purposes. This helps to ensure that all      -
advertising deadlines are met.
]
Procedures:[

After the Secretary is done entering the ad file information into the AS400 system, she gives the
new ad files and all backup documentation to the Administrative Secretary for distribution to the
attorneys.

1.      Review the advertising file cover sheets for accuracy. Compare the information on the
cover sheet to the backup documentation. Make any necessary changes or corrections.

2.      Complete the top of the "Advertising Review Checklist" with the File Number, the Date
Due and the name of the attorney who you are assigning the file to.

3.      To determine who you are assigning the file to, check the Ad File Distribution List to
see who is due to receive the next file.

4.      Enter Asksam - Advertising - Tracking Records - Add a File

This will take you to an entry form that looks like this:

File No.                        Correspondence Type
Date Received                   Date Due Out                    **ATTACHMENT / EXHIBIT** $\mathcal{A}$
Date Assigned                   Assigned to
Date Letter Sent
Comment

Key in the ad File Number, tab to the Correspondence Type field and choose the type of
correspondence from the picklist. Key in the Date Received, the Date Due Out, the Date
Assigned and choose an attorney from the pick list in the "Assigned to" field.

5.      If the ad file is complete, put the file in the attorney's cubby to review.
        If the ad file is incomplete, put the file in the "To Be Typed" box with a "sticky note"
attached as to what backup documentation is needed and who should sign the letter.
]

Name_of_Procedure:[ Advertising Files
]                                        Date:[   7/99        ]
     Type_of_Procedure:[  Advertising
Time/Task_Allocation_No.:[  Attorneys File Review/Preparation 222 & Correspondence
54 (Adv.)
]
     Staff_Responsible:[  Attorneys, Legal Assistant
          Creator:[  Barbara Moore & Lisa Pease

Description:[   Pursuant to Rule 4-7.7, Rules Regulating The Florida Bar, all non-exempt
lawyer advertisements, including direct mail communications and e-mail, must be filed with The
Florida Bar to determine compliance with the rules governing lawyer advertising. The Standing
Committee on Advertising has been charged by the Supreme Court of Florida with the
responsibility of evaluating advertisements. Due to the high volume of advertisements filed by
Florida lawyers, the Standing Committee on Advertising ("SCA") has delegated the initial
review function to the staff of the Ethics & Advertising Department of The Florida Bar.
]
Procedures:[

Support staff receives and processes lawyer advertising submissions, including filing fees, and
sets up a file folder for each submission. (See Adding New Advertising Files.)  The files are
given to the Legal Assistant who assigns an attorney to each ad file and places the file in the
cubby of the appropriate attorney.

The attorney sorts ad files by due date and begins reviewing the file due out earliest. A written
response must be provided within 15 days from the date of receipt of the filing. The attorney
reviews the ad to determine if it complies with the Rules Regulating The Florida Bar and prior
decisions of the Standing Committee on Advertising (SCA). Prior SCA decisions are
maintained in AskSam and can be found, from the Main Menu, by choosing Research and then
SCA Decisions. If an attorney needs assistance in determining compliance, he or she can bring
the ad in question to an ad meeting, usually held from 8:00 - 9:00 a.m. on Monday,
Wednesday, and Friday mornings.

After review, the attorney fills out the yellow Advertising Review Checklist sheet (copy of
Checklist is attached). If an ad has multiple violations, the attorney should highlight each
different type violation with a different color highlighter and use corresponding colors to note
violations on the yellow Checklist. If the attorney seeks guidance from the SCA before issuing
an advisory opinion, the attorney marks "Request for Guidance" on the Checklist. The attorney
then fills out the cover sheet located on the inside cover of the ad file folder (copy of Cover
Sheet is attached) and places the file in the "To be Typed" cubby. Support staff drafts the
appropriate letter and saves it on the computer at "h:\adfiles\" followed by the file number.wpd.
For example: "h:adfiles\01-01895.wpd" or "h:adfiles\01-1895 request for guidance.wpd". Staff
then returns the file to the lawyer's cubby. The attorney finalizes the letter, verifies inclusion of
any attachments, and places it in the "To be Mailed" cubby. If it is after 12:00 p.m., the letter
should be dated for the next business day.

If the attorney is seeking a Request for Guidance, the attorney also prepares a summary of the issue(s) to be presented to the Committee. The format for the summary is at "h:\adv\sca-meet\ request\sample." The completed summary should be saved temporarily at "h:\adv\sca-meet\request\" followed by the ad file number. For example, the summary prepared for a request for guidance for ad file number 99-00206 should be saved as "h:\adv\sca-meet\ request\99-00206." The attorney copies and attaches to the summary any relevant authorities, including past SCA decisions on the issue. The attorney places the summary materials in the file folder. The attorney attaches a note to the finalized letter instructing support staff to place the file in the Appeals rack after the ad opinion letter has been mailed. On the outside of the file folder, the attorney writes, "SCA", the date of the next SCA meeting, and "Request for Guidance." These summaries will later be included as back-up material for the next SCA Agenda. (See Procedure for SCA Agendas.)  The attorney should also have a copy of the summary placed in the file for future reference.

When support staff receives a revision of a previously filed ad, they assign the file to the attorney who performed the initial review (if the attorney is still here) and indicate Revision on the yellow cover sheet. Support staff should seek the advice of an attorney if uncertain whether the ad is a revision of a prior ad or a new ad. If non-exempt information (any information beyond that set forth in Rule 4-7.2(c)(11)) has been added, it will be treated as a new ad, requiring an additional filing fee, and staff will open a new file.

When support staff receives a letter requesting an appeal of an advisory opinion, they draft an appeal letter indicating that the ad will be placed on the next SCA agenda and give the date of the next SCA meeting, attach it to the appropriate file folder, and place the folder in the cubby of the attorney who initially reviewed the ad. These letters are saved on the computer at: "h:\adfiles\" followed by the ad file number and "sca", indicating the file is going to be placed on the next SCA Agenda. The attorney confirms that an appeal has been requested, signs the letter, and marks the outside of the file "SCA" and the next meeting date. The attorney then puts the file in the To Be Mailed cubby, with a post-it note attached instructing staff to place the file in the Appeals rack after the letter is mailed.

If the appeal is to the Board Review Committee, support staff draft an appeal letter indicating that the ad will be placed on the next BRC agenda and give the date of the next BRC meeting, attaches it to the appropriate file folder, and places the folder in the cubby of the Ethics Counsel. These letters are saved on the computer at: "h:\adfiles\" followed by the ad file number and "brc," indicating the file is going to be placed on the next BRC Agenda. The Ethics Counsel confirms that an appeal has been requested, signs the letter, and marks the outside of the file "BRC" and the next meeting date. The Ethics Counsel then puts the file in the To Be Mailed cubby, with a post-it note attached instructing staff to return the file to Ethics Counsel after the letter is mailed. ]

**Name_of_Procedure:**[ Flow Chart for Advertising Files
]
**Type_of_Procedure:**[ Advertising
]
**Process Description:**[ All advertisements that are filed for review must be responded to within 15 days. To ensure that the deadlines are met, procedures and processes must be followed as the ad file flows thorugh the department.
]
**Staff_Responsible:**[ All Departmental Staff
]
**Date:**[  3/99                              ]   **Creator:**[  Rebecca Burke

**Procedures:**[

1.      Finance & Accounting receipts in the money and sends a list of the cash received on the greenbar with the backup material.

2.      The secretary opens the physical ad files, checks for completeness, creates the computer file and claims the money. She checks the advertiser's name against the filing requests database in Asksam to see if a late fee is owed.  She adds all new files to the advertising computer files in the AS400 system.

3.      The secretary gives all the physical files, greenbar and backup documentation to the Administrative Secretary I.  The AS reviews the files for accuracy and completeness.  She makes any necessary changes and distributes the files to the appropriate area for review.

      A.      If the filing is exempt, the AS will complete a refund voucher if necessary.  (See Refunds)

      B.      If the filing is incomplete, the AS puts the file in the "To Be Typed" cubby with a "sticky note" for a "Fee Needed, Envelope Needed, etc." letter along with the attorney's name who should sign the letter.

      C.      If the filing is complete, the AS distributes the file, along with the Advertising Review Checklist, to the attorney for review.

6.      The attorney reviews the ad file, completes the Advertising Review Checklist and puts everything in the "To Be Typed" cubby.

7.      The secretaries type the letters.

8.      Once the letter has been typed, it is placed in the attorney's box for their signature. They sign the letter and complete the appropriate section on the cover sheet. - usually the Staff Recommend line but occassionally the Appeal line.  After signing, the attorney puts the letter in

the "To Be Mailed" cubby.

9.    The program assistant makes the appropriate copies and puts the file in the "To Be Entered" cubby or follows any instructions that may be attached.

10.   The secretaries enter the cover sheet information from the complete/incomplete/exempt and staff recommend lines into the AS400 ad files. After placing an updated cover sheet in the file she enters the information in the Asksam Tracking Record and puts the physical file in the "To Be Filed" cubby.

If at any point in the process it is determined that we should refund the ad file fee, the person making that determination gives the file with instructions to refund the money to the administrative secretary (if we have claimed the money from cash receipts or if the money hasn't been claimed). The file is closed and a code 4 goes on the Staff Recommend line with an explanation of why we are refunding/closing the file on the Note line of the cover sheet.
]



320 S. University Drive
Plantation, FL 33324

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE PAID
THE TICKET CLINIC

-ADVERTISEMENT-

# WAIT!!



DON'T JUST
ROLL OVER
FIGHT BACK
MONEY BACK
GUARANTEE
DETAILS INSIDE

T2  P1 6/30/03

Also in Downtown Fort Lauderdale. - See Back for Details

www.theticketclinic.com

1-800-CITATION
(248-2846)

BEFORE YOU PROCEED...
READ THIS CAREFULLY
IMPORTANT INFORMATION!

Now Also Serving
ALL FLORIDA COUNTIES

**FORT LAUDERDALE**
150 S.E. 12th St.
(Davie Blvd), Suite 301
Ft Lauderdale, FL 33316
Tel (954) 522-5926
Fax (954) 522-5197
EMAIL:
broward@theticketclinic.com

**PALM BEACH**
319 Clematis Street,
Suite 800
West Palm Beach, FL 33401
Tel (561) 655-1999
Fax (561) 802-3567
EMAIL:
palmbeach@theticketclinic.com

**PLANTATION**
320 S. University Drive
Plantation, FL 33324
Tel (954) 382-8880
Fax (954) 382-8864
EMAIL:
plantation@theticketclinic.com

**ORLANDO:**
227 N. Magnolia Ave.
Suite 104
Orlando, FL 32801
Tel (407) 254-0022
Fax (407) 254-0031
EMAIL:
orlando@theticketclinic.com

**MIAMI**
2050 Coral Way,
Suite 602
Miami, FL 33145
Tel (305) 858-9390
Fax (305) 858-9490
EMAIL:
dade@theticketclinic.com

STOP

EXHIBIT A

EXHIBIT B

08/25/2004  11:31  3059404616  YBKG  PAGE  11/22



**THE TICKET CLINIC**
A Law Firm

# Dear Driver,

If you already have a lawyer for this matter,
please disregard this letter.

From the simplest traffic ticket to the most complicated D.U.I.
arrest - the experienced attorneys at the Ticket Clinic® (a firm that concentrates
only on defending traffic offenders and D.U.I's) may help you.

We obtain your name from the County Court Clerk's electronic database where
you received your ticket.

Call the Ticket Clinic® now for your *free consultation*. The Ticket Clinic®
offers payment plans within your budget, and we accept American Express, Master
Card, and VISA.

*Se habla Español!*

Per non criminal
ticket civil
infraction only
Limited offer, call for details

From Only **$69⁹⁵**

# STOP!

DON'T PAY THAT TICKET
**FIGHT BACK!**

**THE TICKET CLIN**

WILL GO TO COURT FOR YOU
**and GUARANTEES**

*NO POINTS or your money back (if no tickets in last 2

*NO COURT APPEARANCES no need for you to appea
(court cost, fines or driver's school may be imposed

NOW YOU CAN
HANDLE IT ALL BY PH
NO OFFICE VISIT REQU

**WE DEFEND ALL TRAFFIC OFFENSES**

*Non criminal infractio

---

- The MIAMI HERALD -

# But officer, I was only driving 55



**ROSALIND RESNICK**

**THE LAW AND YOU**

*This is first of two columns about how to defend yourself in traffic cases.*

**Y**ou're cruising down Interstate 95 with the radio on and your mind millions of miles away. That is, until you're jolted to reality by the blare of the police siren and the glare of the squad car's flashing blue lights.

You pull over and start assembling your excuses. Before you can blurt them out, the officer has handed you a ticket. The charge: speeding. Driving home at a sheepish 54 miles an hour, you realize you were doing at least 70. You start to worry about your car insurance — you can barely afford it now. Should you try to fight the ticket even if you know you broke the law?

Yes, says Mark Gold, the Miami lawyer who owns The Ticket Clinic high-volume legal practice that concentrates on helping drivers get off the hook.

"I recommend everybody to challenge it," Gold said, especially if they have a bad record."

For one, a guilty plea will smack 3 points on your license — rack up 12 points in 12 months, and you've lost your license for 30 days. A conviction could also hike your insurance rates or get your policy canceled. Even if you plead no-contest and go to driving school, your insurance company may drop you," he said.

"There are no guarantees," he said, "but we've been relatively successful. Out of 45 speeding tickets we defended last month, only one person was found guilty and four people had a adjudication withheld. The rest

were dismissed."

Gold, who sports a red Ferrari and has beaten several tickets of his own, doesn't have a magic wand. What he does have is a battery of defenses aimed at breaking down the government's case. Gold is a master of traffic technicalities.

To defend a routine speeding case, Gold typically charges $200. A typical fine in a speeding case is $70 plus $39 for court costs, he said.

"If you know the rules, you can usually find some error in the way the citation was issued or the machine was calibrated," he said.

Police typically use three methods to trap speeders — radar, a pace clock and a time-distance computer. The radar machine the police use must be tested for accuracy every six months by a federally licensed technician. Gold often tries to prove that the machine hadn't been tested recently or questions the qualifications of the technician. He also relies on standard courtroom rules of evidence, such as requiring the officer testifying to produce original documents, not photocopies.

More serious than speeding violations are cases involving reckless driving, driving with a suspended license or an expired tag or leaving the scene of an accident that results in property damage or injuries. All these involve the possibility of jail time.

Reckless driving is punishable by up to 90

days in jail and a fine of $25 to $500 for a first conviction, but it's often difficult for prosecutors to prove because they must show that the person was driving with a "wanton disregard" for safety, Gold said. These cases often involve attempts to elude a police officer in a chase.

"We view these very seriously because, when someone does that, they usually do it at a high rate of speed and they're putting other people's lives in danger," he said.

Driving with a suspended license is punishable by up to a year in jail. Three such convictions within five years can result in a license being revoked for five years. In such cases, Gold says he tries to prove that the officer had no reason to stop the car or that the driver had not been properly notified by state regulators.

In cases involving an expired tag, a driver can often lighten his penalty by bringing a valid registration to the hearing.

Leaving the scene of an accident is perhaps the most serious traffic violation - next to driving under the influence. When you get into an accident, you are required by law to give your name, address and vehicle registration number to the other driver. You are also supposed to remain at the scene until an offi-

cer shows up and, when he does, to show the officer your license.

The penalty for leaving an expired tag, a driver is to provide this information is a fine of up to $500 and up to 60 days in jail. Gold said successfully defended a client against this charge by proving that there was no property or bodily damage.

The best thing for drivers to do when they're pulled over is to act courteously, Gold said. "My advice is to just be quiet and polite," he said. "Don't say anything; just 'yes, sir,' 'thank you, sir.'"

## What he does have is a battery of defenses aimed at breaking down the government's case.

-ADVERTISEMENT-

-ADVERTISEMENT-

-FT. LAUDERDALE SUN SENTINEL-

**PROFESSIONS**

# Law firms concentrate on road wrongs

## Ads seek traffic, DUI cases

BY DAVID ALTANER
Business Writer

In Mark Gold's waiting room, you don't have to read boring legal journals. There's *Car and Driver* and *Audio Equipment* magazine, for people who like cars and car radios.

He drives a red Ferrari. And for Christmas, he's getting a Porsche seat to sit in while he's behind the controls of his desk.

Mark Gold is an attorney who has turned a hobby, fast cars, into a career. Since May, the 32-year-old Gold has been operating his Miami law practice as the Ticket Clinic, a law firm that concentrates on drunken-driving cases and traffic tickets.

"I've always had fast cars and gotten a number of tickets and successfully defended myself," Gold said, explaining how he got the idea.

His is one of at least two firms in South Florida that concentrates on drunken-driving cases. Both advertise on rock'n roll FM radio - WGTR, Hot 105, and Power 96 - gearing their pitch toward the people who get the most tickets, young males 18-34.

Ticket Clinic also has television ads featuring a hapless soul who has lost his driver's license. Buses and taxis pass him by, and he can't even hitch a ride, so he ends up riding a skateboard to work.

The clients are responding to fear: A fine of up to $500 and a jail sentence of up to six months for a first-time drunken-driving conviction. A speeding conviction can raise insurance rates 30 to 40 percent a year.

Advertising is still controversial in legal circles. Former Supreme Court Justice Warren Burger once told a lawyers convention that he would rather dig ditches than be a lawyer who advertises. It is still frowned upon by the American Bar Association, but the Federal Trade Commission told the professional group that it should not overly restrict advertising by lawyers.



Staff photo ELIOT J. SCHECHTER
Attorney Mark Gold concentrates on drunken-driving cases and speeding tickets.

Gold says, "Most of my clients wouldn't know where to find a lawyer. They're not out in the business world."

Nova University law professor Howard Messing said he hadn't seen the ads, but thought the idea was "wonderful for somebody who's arrested for drunk driving, then they know who to go to."

In general, advertising has lowered the prices of some legal services and even made possible the existence of such highly specialized firms, Messing said.

That is, traditional methods of getting customers such as meeting them at the Rotary Club would not bring enough clients through the door, he said.

Mothers Against Drunk Driving official exhibit a tolerance for the ads.

"The Bar has given them the right to do it," said local MADD chapter Vice President Stan Johnson. "If we had our druthers, they wouldn't. But everybody's got the right to a defense."

**Gold got one client off recently because a breath test machine was taken out of service for maintenance. He was able to cast doubt on the results.**

Gold says Ticket Clinic streamlines the ticket-fighting process. Clients fill out standardized forms. The firm handles a large number of cases by keeping dozens of legal motions on file on the computer.

Lawyers can file a motion to suppress evidence on a breath test quickly just by making a few changes in a standard format, instead of composing and dictating an entirely new motion. Lawyers also can handle several cases in an evening of traffic court.

Fees vary depending upon the seriousness of the offense, the number of prior arrests, and whether an accident is involved. A simple drunken-driving case, no accident, involving a first-time offender, could run as low as $930. To win cases, lawyers probe technicalities. For example, Gold got one client off recently because a breath test machine was taken out of service for maintenance three days after the client was tested. He was able to cast doubt on the results.

Gold says he has found the practice busier than he expected. Since May, he has opened a branch in Fort Lauderdale and hired three other attorneys. Right now, he is looking to locate another office in the Cutler Ridge area of Dade County. He eventually hopes to open offices around the state.

"It's a new field; you have to know the rules and know them cold," Gold said. "The days of a lawyer going into the courtroom and taking things as they come are over."



*WE ACCEPT AMEX, VISA, MASTERCARD AND DISCOVER*

## *Call now for your free consultation!*

**MIAMI | FT. LAUDERDALE | PLANTATION | PALM BEACH | ORLANDO**

*Now Serving All Florida Counties*

# 1-800-CITATION (248-2846)

— THE MIAMI HERALD —

# Lawyer wins points with traffic violators

## He defends them against tickets for speeding and drunk driving

by LISA GIBBS
*Herald Staff Writer*



Lawyer Mark Gold likes fast cars, particularly red Ferraris. He has gotten a lot of traffic tickets driving them.

He has kept a clean driving record, though, by defending himself in court. In the last three months, he has turned that defense experience into a growing business.

Gold, 32, opened the Ticket Clinic at 2615 Biscayne Blvd. in June. The law firm handles mostly speeding tickets and drunk driving cases. For a flat fee, he or his associate files a plea of not guilty and tries the case in court.

Gold's firm is one of the first in the country to devote most of its practice to defending traffic tickets, an unusual legal specialty, said Judith Korchin, Dade County Bar president.

The firm also breaks with legal tradition by relying on advertising to draw customers.

Ominous-sounding radio commercials on WGTR and WPOW tell listeners that traffic violations could put points on their license and raise their insurance premiums. The firm started making a television commercial Sept. 10, and Gold said he hopes to advertise on billboards and newspapers.

## The law firm handles mostly speeding tickets and drunk driving cases.

"Everybody needs this kind of defense," he said. Especially men between the ages of 18 and 34, the majority of Gold's clients, he said.

"They get more tickets than anybody."

And especially people who rely on their vehicles for work, such as truck drivers, taxi drivers, electric and telephone repair workers.

"They're very concerned with keeping their licenses clean."

When Gold defends the client, he looks for technicalities that will win the case for him: procedures that weren't followed correctly, improper use of radar equipment or Breathalyzer testing.

"Fault isn't the issue," he said. "We very zealously defend the clients. We get some police officers mad at us because we're good at it."

Traffic judges and Florida Highway patrol officers say it's all in a day's work.

"In a lot of situations, the issue is not guilt or innocence," said Traffic Judge Harvey Baxter. The citizens are availing themselves of every right they have."

"Everybody's entitled to counsel," said patrol Lt. Noel Roy. "If you lose a ticket it's just one of those things." ...

---



# TRAFFIC SCHOOL INFORMATION
## We now offer 4 options online at: logontrafficschool.com

- Approved by DHSMV
- Register and attend online
- Convenient - logon and off as often as you like
- No boring classes / no teacher hassles

*Las clases también se ofrecen en Español*

### DON'T WANT TO FIGHT THAT TICKET?

**1) 4 Hour basic traffic school $39.95**
- No Points
- No Insurance increase

**2) Court ordered 8 hour traffic school $75.00**
- Complies with all 8 hour court ordered school requirements without being there

**3) Never had a driver license?**
- First time driver $39.99 *(take this course today)*
- Florida law requires your to complete the Drug and Alcohol Awareness (DATA) course before you can apply.

**4) Are you over 55?**
- You can save 10% on your auto insurance. • Mature Drivers Class $29.00
(Florida Law mandates the insurance companies give a 10% discount for three years on your auto insurance once you successfully complete the Mature Drivers Class.)

## REGISTER FOR ANY OF THESE CLASSES TODAY AT:
## www.logontrafficschool.com

# 1-800-CITATION (248-2846)

## Qualifications and Experience

Ted L. Hollander, Esq., is a partner in Gold & Hollander, P.A. d/b/a The Ticket Clinic®. Mr Hollander is a graduate of the University of Memphis School of Law and has been a member of the Florida Bar since 1997. Before his association with The Ticket Clinic®, he was a Broward County Public Defender with an emphasis on D.U.I. Since his admission to the Florida Bar, he has concentrated his practice on D.U.I. and traffic offenses. The Ticket Clinic's main office is located in Fort Lauderdale.

# IN THE SUPREME COURT OF FLORIDA
### (Before a Referee)

THE FLORIDA BAR,

Complainant,

vs.

MARK STEPHEN GOLD,

Respondent.

_____/

Supreme Court Case
No. SC04-1661

The Florida Bar File
No. 2004-70,026(02S)

## THE FLORIDA BAR'S WITNESS LIST

1. Mark Stephen Gold, Respondent
   2050 Coral Way, Suite 602
   Miami, Florida 33145
   (305) 858-9390

2. Elizabeth Tarbert, Ethics Counsel
   Ethics/Advertising Department
   The Florida Bar
   651 East Jefferson Street
   Tallahassee, Florida 32399
   (850) 561-5780

   Ms. Tarbert will testify as the Bar records custodian for the advertising files and the survey materials to authenticate those documents as business records of the Bar. Also, she will testify to the Bar's general process in reviewing advertisements, and in particular, her dealings with Respondent regarding the advertisements that he has filed over the years.

3. Any and all witnesses listed by Respondent.

4. Any and all witnesses necessary in rebuttal.

ATTACHMENT / EXHIBIT C

EX I

04/01/05  FRI 16:52

Respectfully submitted,

WILLIAM MULLIGAN
Bar Counsel
Florida Bar No. 956880
The Florida Bar
444 Brickell Avenue, Ste. M100
Miami, Florida 33131
(305) 377-4445

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing The Florida Bar's Witness List was sent via facsimile (305) 349-7031 and regular mail to the Honorable Victoria Platzer, Referee, at Dade County Courthouse, 73 West Flagler Street, Room 525, Miami, Florida 33130; and that a true and correct copy was sent via facsimile (305) 379-3428 and regular mail to Mark Stephen Gold c/o Alan Jay Kluger, Attorney for Respondent, at Miami Center, 17th Floor, 201 South Biscayne Boulevard, Miami, Florida 33131; and via regular mail to John Anthony Boggs, Staff Counsel, at The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399, on this 1ST day of April, 2005.

WILLIAM MULLIGAN
Bar Counsel



Donna E Hostutler/The Florida
Bar

06/16/2006 09:38 AM

To   Christina D. Sykes/The Florida Bar@FLABAR, Pamela R
     Brown/The Florida Bar@FLABAR, Amanda E Grambling/The
     Florida Bar@FLABAR
cc   Elizabeth Tarbert/The Florida Bar@FLABAR
bcc
Subject   Mark Gold ads

FYI, please assign ALL Mark Gold ads to Elizabeth even if they are revisions handled by another staff
attorney.  See me if questions.

Donna E. Hostutler
Legal Assistant
Ethics and Advertising
(800) 342-8060, ext. 5778
(850) 561-5778
(850) 561-5750 (Fax)

ATTACHMENT / EXHIBIT



# The Florida Bar

**651 East Jefferson Street**
**Tallahassee, Florida 32399-2300**

JOHN F. HARKNESS, JR.
EXECUTIVE DIRECTOR

850/561-5600
WWW.FLABAR.ORG

May 17, 2004

Mr. Mark S. Gold
The Ticket Clinic
2050 Coral Way, Suite 602
Miami, Florida 33145

**ATTACHMENT / EXHIBIT**

Re:   File No. 04-02267 (Yellow Pages Ad - Traffic Tickets/ D.U.I.)

Dear Mr. Gold:

I received your yellow pages advertising filing on May 3, 2004.

Your yellow pages advertisement does not comply with Rules 4-7.1 through 4-7.11, Rules Regulating The Florida Bar, for the following reasons:

1.      Your yellow pages advertisement states:

Don't Miss Work!

An advertisement cannot create unjustified expectations about results the lawyer can achieve. Rule 4-7.2(b)(1)(B). The Standing Committee on Advertising interprets this rule as precluding language that states or implies that the lawyer can achieve specific results for prospective clients. This language is precluded by Rule 4-7.2(b)(1)(B).

2.      Your yellow pages advertisement contains information beyond that listed in Rule 4-7.2(c)(11). Therefore, it must contain the following disclosure: "The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience." Rule 4-7.3(b). This disclosure must be printed in type that is clearly legible and no smaller than one-fourth the size of the largest type used anywhere in the advertisement. *Id.* While one version of your advertisement contains the required disclosure, 2 versions of your advertisement do not have the requisite language. Accordingly, those versions of your advertisement do not comply with the disclosure requirement.

Use of the advertisement may result in disciplinary action. Rule 4-7.7(e). The committee recommends that you revise the advertisement and file a copy of the revised advertisement for review. If you file a revised advertisement, please clearly mark the file number of the original advertisement on the revision.

You do not pay an additional fee to file a revision that only includes those changes that are necessary to comply with this opinion. If you add or change a photograph, illustration, or information that is not listed in Rule 4-7.2(c)(11), as adopted by the Supreme Court of Florida on April 25, 2002, the advertisement will be considered a new advertisement requiring an additional $100 filing fee. Also, the advertising rules and the Committee's interpretation of those rules may change over time, requiring revision and refiling of existing advertisements.

Mr. Mark S. Gold
May 17, 2004
Page 2


If you disagree with my opinion, you have thirty (30) days to request that the Standing Committee review this opinion. A request for review must be postmarked no later than thirty (30) days from the date of this letter, not the date of receipt. The request must contain the original file number and clearly state the issues for review. You may include a written argument explaining why you believe my opinion is incorrect. The request for review and written argument must be on letter-size paper, double-spaced, and no longer than five (5) pages in length. The Standing Committee meets approximately once per month. You will be notified of its decision promptly.

This opinion addresses only the lawyer advertising rules. It does not address any unlicensed practice of law or ethics issues that may be present in the advertisement itself or in the services being provided. The opinion is advisory only. It is not binding in a grievance proceeding, but may be offered as evidence by you or by The Florida Bar. The opinion assumes that all representations made in your advertisement and supporting documentation are not false, misleading or deceptive.

Finally, you must keep a copy of your advertisement for three years after its last dissemination, along with a record of where and when it was used. The Standing Committee on Advertising keeps its records for six years. If you want to rely on this opinion, you should keep a copy of the advertisement, opinion letter and any related correspondence for your files. Please refer to file number 04-02267 in all future correspondence regarding this advertisement.

If you have any questions, please call me at (850) 561-5780.

Sincerely,

Arne C. Vanstrum
Assistant Ethics Counsel

ACV/mll

h:\adfiles\04-02267



# The Florida Bar

JOHN F. HARKNESS, JR.
EXECUTIVE DIRECTOR

651 EAST JEFFERSON STREET
TALLAHASSEE, FLORIDA 32399-2300

April 25, 2005

850/561-5600
WWW.FLABAR.ORG

Mr. Mark S. Gold
The Ticket Clinic A Law Firm
2050 Coral Way, Suite 602
Miami, Florida 33145

Re:     File No. 05-01354 (Direct Mail Ad - We Believe Almost Any Case Can Be Won!)

Dear Mr. Gold:

I received your revised direct mail advertising filing on April 15, 2005. You will receive a $100.00 refund under a separate cover, because your revised advertisement is considered to be a revision to a prior filing of file number 05-01354. Your revised direct mail advertisement does not comply with Rules 4-7.1 through 4-7.11, Rules Regulating The Florida Bar, for the following reason:

A direct mail advertisement seeking employment in a specific matter cannot reveal the nature of the prospective client's legal problem on the outside of a self-mailing brochure. Rule 4-7.4(b)(2)(K). The following prohibited information appears on the outside of your self-mailing brochure:

Firm logo of a traffic sign with a road and THE TICKET CLINIC A Law Firm

THE TICKET CLINIC          **ATTACHMENT / EXHIBIT**

1-800-CITATION

This information reveals the nature of the prospective client's legal problem to anyone viewing the outside of the brochure in violation of Rule 4-7.4(b)(2)(K).

Use of the advertisement may result in disciplinary action. Rule 4-7.7(e). The committee recommends that you revise the advertisement and file a copy of the revised advertisement for review. If you file a revised advertisement, please clearly mark the file number of the original advertisement on the revision.

You do not pay an additional fee to file a revision that only includes those changes that are necessary to comply with this opinion. If you add or change any information that is not listed in Rule 4-7.2(c)(12), the advertisement will be considered a new advertisement requiring an additional $100 filing fee. Also, the advertising rules and the Committee's interpretation of those rules may change over time, requiring revision and refiling of existing advertisements.

If you disagree with my opinion, you have thirty (30) days to request that the Standing Committee review this opinion. A request for review must be postmarked no later than thirty (30) days from the date of this letter, not the date of receipt. The request must contain the original file number and clearly state the issues for review. You may include a written argument explaining why you believe my opinion is incorrect. The request for review and written argument must be

EX "5"

Mr. Mark S. Gold
April 25, 2005
Page 2

on letter-size paper, double-spaced, and no longer than five (5) pages in length. The Standing Committee meets approximately once per month. You will be notified of its decision promptly.

This opinion addresses only the lawyer advertising rules. It does not address any unlicensed practice of law or ethics issues that may be present in the advertisement itself or in the services being provided. The opinion is advisory only. It is not binding in a grievance proceeding, but may be offered as evidence by you or by The Florida Bar. The opinion assumes that all representations made in your advertisement and supporting documentation are not false, misleading or deceptive.

Finally, you must keep a copy of your advertisement for three years after its last dissemination, along with a record of where and when it was used. The Standing Committee on Advertising keeps its records for six years. If you want to rely on this opinion, you should keep a copy of the advertisement, opinion letter and any related correspondence for your files. Please refer to file number 05-01354 in all future correspondence regarding this advertisement.

If you have any questions, please call me at (850) 561-5780.

Sincerely,

Joy A. Bruner
Assistant Ethics Counsel

JAB/mll

cc: Lorraine Hoffman, Ft. Lauderdale

h:\adfiles\05-01354-2



# The Florida Bar

**651 East Jefferson Street**
**Tallahassee, Florida 32399-2300**
June 16, 2006

John F. Harkness, Jr.
Executive Director

850/561-5600
www.FLABAR.org

Mr. Mark S. Gold
The Ticket Clinic A Law Firm
2050 Coral Way, Suite 602
Miami, Florida 33145

Re:     File No. 06-02399 (Direct Mail Ad - Defend Your Rights With Credit Coupon)

Dear Mr. Gold:

I received your direct mail advertising filing on June 5, 2006.

Your direct mail advertisement does not comply with Rules 4-7.1 through 4-7.11, Rules Regulating The Florida Bar, for the following reasons:

1.      Every advertisement must contain the name of a city or town where the advertising attorney has a bona fide office.  Rule 4-7.2(a)(2).   If the office is not in a city or town, the attorney must list the county instead.  *Id.*  This information must be clearly legible and no smaller than one-quarter the size of the largest type used.  Rule 4-7.2(c)(11).   The geographic disclosure is smaller than one-quarter the size of the largest type used, in violation of Rule 4-7.2(c)(11).  The largest type used in your advertisement is "ANY CASE."  Please note that the Standing Committee on Advertising has directed bar staff to measure text with a ruler as it appears on the advertisement as opposed to font size.

2.      An attorney cannot make false, misleading, deceptive, or unfair communications about the attorney or services offered.  Rule 4-7.2(b)(1).  This rule prohibits advertisements that contain a material misrepresentation of fact or law or a misleading omission.  Rule 4-7.2(b)(1)(A) and comment.  The language "FROM $5" is precluded by Rule 4-7.2(b)(1)(A) unless you handle a substantial number of cases for $5.  Additionally, if there are any significant limitations on the $5 fee, such as if that is the fee for the second or any subsequent tickets, that must be disclosed in the advertisement in type size that is at least one quarter the size of the largest type used anywhere in the advertisement.  Those limitations must also be provided in Spanish in the version of the advertisement that uses Spanish, in type size that is at least one quarter the size of the largest type used anywhere in the advertisement.

Also, the language used to note the limitations on the money back guarantee (that it applies to ‾‾‾‾‾‾‾, non-accident, non-criminal cases only) is smaller than one-quarter the size of the largest type used in the advertisement, in violation of Rules 4-7.2(b)(1) and 4-7.2(c)(11).  Finally, any other limitations on the guarantee must be disclosed in the advertisement in type size that is at least one-quarter the size of the largest type used in the advertisement.  Rules 4-7.2(b)(1) and 4-7.2(c)(11).  As noted to you previously, you formerly limited the guarantee to persons who had no traffic violations in the preceding 2 years.  If that is still the case, that must be disclosed in the advertisement in type size at least one-quarter the size of the largest type used in the advertisement.  Rules 4-7.2(b)(1) and 4-7.2(c)(11).

ATTACHMENT / EXHIBIT _____

Mr. Mark S. Gold
June 16, 2006
Page 2

3.      An advertisement cannot create unjustified expectations about results the lawyer can achieve. Rule 4-7.2(b)(1)(B). The Standing Committee on Advertising interprets this rule as precluding language that states or implies that the lawyer can achieve specific results for prospective clients. The following language is precluded by Rule 4-7.2(b)(1)(B):

4.      The following language describes or characterizes the quality of the services being offered and is therefore prohibited by Rule 4-7.2(b)(3):

        **Ted L. Hollander**, is *sought out for* his extensive knowledge. . . .

The language would comply if revised to instead state as follows, assuming the statement is true:

        **Ted L. Hollander**, has extensive knowledge. . . .

5.      Every advertisement must contain the name of at least one lawyer who is responsible for the advertisement's content. Rule 4-7.2(a)(1). This information must be clearly legible and no smaller than one-quarter the size of the largest type used. Rule 4-7.2(c)(11). Although a lawyer's name appears, it is smaller than one-quarter the size of the largest type used, in violation of Rule 4-7.2(c)(11).

6.      All information required by the advertising rules must appear in the language used in the advertisement. Rule 4-7.2(c)(10). If more than one language is used in the advertisement, the required information must appear in each language used in the advertisement. *Id.* This information must be clearly legible and no smaller than one-quarter the size of the largest type used. Rule 4-7.2(c)(11). You use both English and Spanish. Your statement of qualifications as required by Rule 4-7.4(b)(2)(E) does not appear in Spanish as required by Rule 4-7.2(c)(10).

7.      A self-mailing brochure must be marked "advertisement" in red ink on the address panel of the brochure and on the inside. Rule 4-7.4(b)(2)(B). This information must be clearly legible and no smaller than one-quarter the size of the largest type used. Rule 4-7.2(c)(11). Brochures requested by clients or prospective clients need not contain the "advertisement" mark. Although the brochure is marked "advertisement," it is not in red, and the "advertisement" mark on the inside of the brochure is smaller than one-quarter the size of the largest type used, in violation of Rules 4-7.4(b)(2)(B) and 4-7.2(c)(11). The "anuncio" mark in the Spanish advertisement also is not in red ink and is not of sufficient type size on the inside of the brochure, in violation of Rules 4-7.4(b)(2)(B) and 4-7.2(c)(11).

8.      The first sentence of every direct mail advertisement prompted by a specific occurrence must state: "If you have already retained a lawyer for this matter, please disregard this letter." Rule 4-7.4(b)(2)(G). This information must be clearly legible and no smaller than one-quarter the size of the largest type used. Rule 4-7.2(c)(11). This statement does not appear as the first sentence in the direct mail advertisement as required by Rule 4-7.4(b)(2)(G) in either English or Spanish.

9.      The first sentence of every direct mail advertisement prompted by a specific occurrence must state: "If you have already retained a lawyer for this matter, please disregard this letter." Rule 4-7.4(b)(2)(G). This information must be clearly legible and no smaller than one-quarter

Mr. Mark S. Gold
June 16, 2006
Page 3

the size of the largest type used. Rule 4-7.2(c)(11). Although the required first sentence appears, it is smaller than one-quarter the largest type used in both English and Spanish, in violation of Rule 4-7.2(c)(11).

10.     Every direct mail advertisement "prompted by a specific occurrence" must disclose how the lawyer obtained the recipient's name and address. Rule 4-7.4(b)(2)(J). The purpose is to inform the recipient how much information the lawyer has about the matter. Comment to Rule 4-7.4. This information must be clearly legible and no smaller than one-quarter the size of the largest type used. Rule 4-7.2(c)(11). Although the required information appears, the disclosure is smaller than one-quarter the size of the largest type used in both English and Spanish, in violation of Rule 4-7.2(c)(11).

11.     A direct mail advertisement seeking employment in a specific matter cannot reveal the nature of the prospective client's legal problem on the outside of a self-mailing brochure. Rule 4-7.4(b)(2)(K). Your logo and firm name on the outside of your self-mailing brochure reveal the nature of the prospective client's legal problem in violation of Rule 4-7.4(b)(2)(K).

Regarding your traffic school, please see *Bammac, Inc. v. Grady*, 500 So.2d 274 (Fla. 1st DCA 1987).

I understand that most of these issues were not addressed in bar staff's letters to you regarding files 06-00379 and 05-01354 regarding similar advertisements. I apologize for Ms. Bruner's failure to point out those issues.

Use of the advertisement may result in disciplinary action. Rule 4-7.7(e). The committee recommends that you revise the advertisement and file a copy of the revised advertisement for review. If you file a revised advertisement, please clearly mark the file number of the original advertisement on the revision.

You do not pay an additional fee to file a revision that only includes those changes that are necessary to comply with this opinion. If you add or change any information that is not listed in Rule 4-7.2(c)(12), the advertisement will be considered a new advertisement requiring an additional $150 filing fee. Also, the advertising rules and the Committee's interpretation of those rules may change over time, requiring revision and refiling of existing advertisements.

If you disagree with my opinion, you have thirty (30) days to request that the Standing Committee review this opinion. A request for review must be postmarked no later than thirty (30) days from the date of this letter, not the date of receipt. The request must contain the original file number and clearly state the issues for review. You may include a written argument explaining why you believe my opinion is incorrect. The request for review and written argument must be on letter-size paper, double-spaced, and no longer than five (5) pages in length. The Standing Committee meets approximately once per month. You will be notified of its decision promptly.

This opinion addresses only the lawyer advertising rules. It does not address any unlicensed practice of law or ethics issues that may be present in the advertisement itself or in the services being provided. The opinion is advisory only. It is not binding in a grievance proceeding, but may be offered as evidence by you or by The Florida Bar. The opinion assumes that all

Mr. Mark S. Gold
June 16, 2006
Page 4

representations made in your advertisement and supporting documentation are not false, misleading or deceptive.

Finally, you must keep a copy of your advertisement for three years after its last dissemination, along with a record of where and when it was used. The Standing Committee on Advertising keeps its records for six years. If you want to rely on this opinion, you should keep a copy of the advertisement, opinion letter and any related correspondence for your files. Please refer to file number 06-02399 in all future correspondence regarding this advertisement.

If you have any questions, please call me at (850) 561-5780.

Sincerely,

Elizabeth Clark Tarbert
Ethics Counsel

cc:   Ms. Joy A. Bruner, Assistant Ethics Counsel

ECT/pb\h:\adfiles\06-02399-1



**THE TICKET CLINIC**
A Law Firm

2050 Coral Way, Suite 602
Miami, FL 33145
Phone (305) 858-9390
Fax   (305) 858-9490
Email:
dade@theticketclinic.com

**HIALEAH**
1165 West 49th St., Suite 202
Hialeah, FL 33012
Phone: (305) 824-3630
Fax: (305) 824-3208
Email:
hialeah@theticketclinic.com

**NORTH MIAMI BEACH**
18500 NE 5th Ave, 2nd Floor
N. Miami Beach, FL 33179
Phone: (305) 653-9993
Fax:   (305) 653-7077
Email:
nmb@theticketclinic.com

**FT. LAUDERDALE**
150 S. E. 12th St. Suite #301
Ft Lauderdale, FL 33316
Phone: (954) 522-5926
Fax:   (954) 522-5197
Email:
broward@theticketclinic.com

**PLANTATION**
320 S. University Drive
Plantation, FL 33324
Phone (954) 382-8880
Fax   (954) 382-8864
Email:
plantation@theticketclinic.com

**DELRAY BEACH**
4665 W. Atlantic Ave, Suite C
Delray Beach, FL 33445
Phone (561) 381-5101
Fax   (561) 381-5104
Email:
delray@theticketclinic.com

**WEST PALM BEACH**
319 Clematis St. Suite #800
West Palm Beach, FL 33401
Phone (561) 655-1999
Fax   (561) 802-3567
Email:
palmbeach@theticketclinic.com

**ORLANDO**
646 W. Colonial Drive, 1st Floor
Orlando, FL 32804
Phone (407) 254-0022
Fax   (407) 254-0031
Email:
orlando@theticketclinic.com

**JACKSONVILLE**
3440 Beach Boulevard
Jacksonville, FL 32207
Phone (904) 398-7979
Fax   (904) 398-8857
Email:
jax@theticketclinic.com

February 8, 2005

The Florida Bar
Standing Committee on Advertising
650 Apalachee Parkway
Tallahassee, Florida 32399-2300

Enclosed please find the proposed ad, along with a CD for your review.

Same shall be aired on the radio.

Also, enclosed is a check for $100.00.

Sincerely,

Mark S. Gold, Esq.

ATTACHMENT / EXHIBIT H

6829

**GOLD AND ASSOCIATES, P.A.**
DBA THE TICKET CLINIC
2050 CORAL WAY, SUITE 602
MIAMI, FL  33145

MELLON UNITED NATIONAL BANK
MIAMI, FLORIDA
63-964-670

2/15/2005

PAY TO THE
ORDER OF      FLORIDA BAR

$  **100.00

One Hundred and 00/100********************************************************************************************      DOLLARS

FLORIDA BAR

MEMO

⑆006829⑆ ⑆067009646⑆ 0031145147⑆

COURT COSTS ADDITIONAL IF ANY.GUARANTEE APLIES TO CIVIL INFRACTIONS, NON ACCIDENT, NON MOVING, NON CRIMINAL. MARK GOLD ATTORNEY.

SPEEDING   SUSPENDED LICENCE   DUI

DON'T PAY THAT TICKET

DON'T PLEAD GUILTY   CALL THE LAWYERS AT THE TICKET CLINIC

AT 1 800 CITATION

WE BELIEVE ALMOST ANY CASE CAN BE WON

THE TICKET CLINIC IS ONE OF THE FIRST LAW FIRMS IN THE NATION TO CONCENTRATE SOLELY ON TRAFFIC OFFENSES AND DUI

SINCE 1987, FOR ALMOST 20 YEARS, WE,VE HANDLED OVER A QUARTER OF A MILLION TRAFFIC TICKETS AND THOUSANDS OF DUI'S

EXPERIENCE IS NOT EXPENSIVE, OUR FEES START AT JUST 69.95 AND WE WILL BEAT ANY ADVERTISED PRICE.

WE GUARANTEE NO POINTS ON MOST CIVIL INFRACTIONS, OR YOUR MONEY BACK

WHY WASTE YOUR VALUABLE TIME RUNNING TO COURT OR GOING TO TRAFFIC SCHOOL IF YOU DON'T HAVE TO

HIRING THE TICKET CLINIC IS FAST AND EASY...OVER THE PHONE AT 1 800 CITATION, OR COME INTO ANY ONE OF OUR TEN CONVENIENT LOCATIONS

WITH OFFICES FROM MIAMI TO JACKSONVILLE WE HANDLE TICKETS IN EVERY FLORIDA COUNTY

THE TICKET CLINIC.. OUR GOAL IS TO GET YOUR CASE DISMISSED

1 800 CITATION



**DADE**
2298 South Dixie Highway
Miami, FL 33133
Phone (305) 858-9390
Fax   (305) 858-9490
Email:
dade@theticketclinic.com

**KENDALL**
11776 N. Kendall Dr. 2
Miami, FL 33183
Phone: (305) 279-5101
Fax: (305) 274-9141
Email:
kendall@theticketclinic.com

**HIALEAH**
1165 West 49th St., Suite 202
Hialeah, FL 33012
Phone: (305) 824-3630
Fax: (305) 824-3208
Email:
hialeah@theticketclinic.com

**NORTH MIAMI BEACH**
18500 NE 5th Ave, 2nd Floor
N. Miami Beach, FL 33179
Phone: (305) 653-9993
Fax:   (305) 653-7077
Email:
nmb@theticketclinic.com

**FT. LAUDERDALE**
1580 South Federal Highway
Ft Lauderdale, FL 33316
Phone: (954) 522-5926
Fax:   (954) 522-5197
Email:
broward@theticketclinic.com

**PLANTATION**
320 S. University Drive
Plantation, FL 33324
Phone (954) 382-8880
Fax   (954) 382-8864
Email: .
plantation@theticketclinic.com

**DELRAY BEACH**
4665 W. Atlantic Ave, Suite C
Delray Beach, FL 33445
Phone (561) 381-5101
Fax   (561) 381-5104
Email:
delray@theticketclinic.com

**WEST PALM BEACH**
2219 Belvedere Rd.
West Palm Beach, FL 33406
Phone (561) 478-1266
Fax   (561) 478-1210
Email:
palmbeach@theticketclinic.com

**ORLANDO**
646 W. Colonial Drive, 1st Floor
Orlando, FL 32804
Phone (407) 254-0022
Fax  (407) 254-0031
Email:
orlando@theticketclinic.com

August 1, 2006

Ms. Cynthia Booth
The Florida Bar
651 E. Jefferson Street
Tallahassee, Florida 32399-2300

Re: File No.: 05-01834

Dear Ms. Booth:

Enclosed please find a CD and transcript of a 30 second radio spot, and a check for $150.00 (dollars).

This is a shorter version of the ad you already approved in the above referenced file.

Nothing new has been added, and accordingly, I expect you will approve it without changing your prior opinion.

I do not believe the rules provide for a new review by someone else of matters for which you have already approved.

Accordingly, I expect this to be reviewed by you, and consistent with your prior opinions.

Thank you in advance for your anticipated cooperation.

Very truly yours,

Mark S. Gold, Esq.

**ATTACHMENT / EXHIBIT**

cc: Alan J. Kluger
    Brian Tannenbaum
    Tim Chinaris

COURT COSTS ADDITIONAL IF ANY. GUARANTEE APPLIES TO CIVIL INFRACTIONS, NON ACCIDENT, NON MOVING, NON CRIMINAL. MARK GOLD, ATTORNEY, MIAMI.

SPEEDING, SUSPENDED LICENCE, DUI

DON'T PAY THAT TICKET

DON'T PLEA GUILTY CALL THE LAWYERS AT THE TICKET CLINIC AT 1-800 - CITATION.

EXPERIENCE IS NOT EXPENSIVE, OUR FEES START AT JUST 69.95 AND WE WILL BEAT ANY ADVERTISED PRICE.

WE GUARANTEE NO POINTS ON MOST CIVIL INFRACTIONS, OR YOUR MONEY BACK.

CALL 1-800- CITATION, OR COME INTO ANY ONE OF OUR TEN CONVENIENT LOCATIONS.

WE HANDLE TICKETS IN EVERY FLORIDA COUNTY

THE TICKET CLINIC.... OUR GOAL IS TO GET YOUR CASE DISMISSED.

1-800-CITATION.



# The Florida Bar

JOHN F. HARKNESS, JR.
EXECUTIVE DIRECTOR

**651 EAST JEFFERSON STREET**
**TALLAHASSEE, FLORIDA 32399-2300**
August 14, 2006

850/561-5600
WWW.FLABAR.ORG

Mr. Mark S. Gold
The Ticket Clinic
2050 Coral Way, Suite 602
Miami, Florida 33145

ATTACHMENT / EXHIBIT

Re:    File No. 05-01834 (Radio Ad - Don't Pay That Ticket)

Dear Mr. Gold:

I received your revised radio advertising filing on August 7, 2006. You will receive a $150 refund under a separate cover, because your radio advertisement is considered a revision of your advertisement in file number 05-01834. Your revised radio advertisement does not comply with Rules 4-7.1 through 4-7.11, Rules Regulating The Florida Bar, for the following reasons:

1.    Every advertisement must contain the name of a city or town where the advertising attorney has a bona fide office. Rule 4-7.2(a)(2). If the office is not in a city or town, the attorney must list the county instead. *Id*. This information must be clearly intelligible. Rule 4-7.2(c)(11). The geographic disclosure "Miami" spoken extremely rapidly at the beginning of the advertisement is not clearly intelligible, in violation of Rule 4-7.2(c)(11).

2.    An attorney cannot make false, misleading, deceptive, or unfair communications about the attorney or services offered. Rule 4-7.2(b)(1). This rule prohibits advertisements that contain a material misrepresentation of fact or law or a misleading omission. Rule 4-7.2(b)(1)(A) and comment. The following language is precluded by Rule 4-7.2(b)(1)(A):

We guarantee no points on most civil infractions or your money back.

You have indicated in some prior files that the money back guarantee is limited to persons with no traffic infractions in the past 2 years. If that or any other significant limitation applies to the money back guarantee, the limitation must be stated in the advertisement in a way that is clearly intelligible. Rules 4-7.2(b)(1)(A) and 4-7.2(c)(11).

3.    Every advertisement that contains information about the lawyer's fee, including a contingent fee, must disclose whether the client will be liable for any expenses in addition to the fee. Rule 4-7.2(c)(4). This information must be clearly legible and no smaller than one-quarter the size of the largest type used. Rule 4-7.2(c)(11). The following information appears regarding fees and costs:

Court costs additional if any.

While the client's responsibility for costs is disclosed, the disclosure, spoken extremely rapidly at the beginning of the advertisement, is not clearly intelligible, in violation of Rule 4-7.2(c)(11).

4.    An attorney can advertise under a trade name only if the trade name not false, misleading, or deceptive. Rules 4-7.10(b) and 4-7.2(b)(1). The trade name, The Ticket Clinic, is misleading without the disclaimer "A Private Law Firm" which must be spoken in a way which is clearly intelligible everywhere in the advertisement that the trade name "The Ticket Clinic" appears.

Mr. Mark S. Gold
August 14, 2006
Page 2

I realize that bar staff failed to point out these issues to you in your prior submissions; I apologize for that oversight.

Use of the advertisement may result in disciplinary action. Rule 4-7.7(e). The committee recommends that you revise the advertisement and file a copy of the revised advertisement for review. If you file a revised advertisement, please clearly mark the file number of the original advertisement on the revision.

You do not pay an additional fee to file a revision that only includes those changes that are necessary to comply with this opinion. If you add or change any information that is not listed in Rule 4-7.2(c)(12), the advertisement will be considered a new advertisement requiring an additional $150 filing fee. Also, the advertising rules and the Committee's interpretation of those rules may change over time, requiring revision and refiling of existing advertisements.

If you disagree with my opinion, you have thirty (30) days to request that the Standing Committee review this opinion. A request for review must be postmarked no later than thirty (30) days from the date of this letter, not the date of receipt. The request must contain the original file number and clearly state the issues for review. You may include a written argument explaining why you believe my opinion is incorrect. The request for review and written argument must be on letter-size paper, double-spaced, and no longer than five (5) pages in length. The Standing Committee meets approximately once per month. You will be notified of its decision promptly.

This opinion addresses only the lawyer advertising rules. It does not address any unlicensed practice of law or ethics issues that may be present in the advertisement itself or in the services being provided. The opinion is advisory only. It is not binding in a grievance proceeding, but may be offered as evidence by you or by The Florida Bar. The opinion assumes that all representations made in your advertisement and supporting documentation are not false, misleading or deceptive.

Finally, you must keep a copy of your advertisement for three years after its last dissemination, along with a record of where and when it was used. The Standing Committee on Advertising keeps its records for six years. If you want to rely on this opinion, you should keep a copy of the advertisement, opinion letter and any related correspondence for your files. Please refer to file number 05-01834 in all future correspondence regarding this advertisement.

If you have any questions, please call me at (850) 561-5780.

Sincerely,

Elizabeth Clark Tarbert
Ethics Counsel

cc:    Ms. Kathy J. Bible, Advertising Counsel, Lawyer Regulation



**DADE**
**2298 South Dixie Highway**
**Miami, FL 33133**
**Phone (305) 858-9390**
**Fax   (305) 858-9490**
**Email:**
**dade@theticketclinic.com**

January 16, 2007

The Florida Bar
Standing Committee on Advertising
650 Apalachee Parkway
Tallahassee, Florida 32399-2300

ATTACHMENT / EXHIBIT

Re: file no.  04 02267, 06-02399

Please consider this my request for review of the above referenced files.

First and foremost, I have requested that Ms. Elizabeth Clark Tarbert be disqualified from reviewing any of my proposed advertisements, This request has been denied.  It is improper for her to review my ads as she is listed as a witness on behalf of the bar in pending litigation before the Honorable Judge Platzer, case number SC04-1661.  See attached witness list (Exhibit 1).  Further, her insistence on reviewing all my files, see attached (Exhibit 2) are in contravention of the Bar's standard business practices, see attached (Exhibit 3) which require that a file be randomly assigned, and once reviewed revisions shall go back to the original reviewer.  Further evidence of this is that she has overruled prior opinions which, in part, approved my ads, including opinions issued by Joy Bruner, Cynthia Booth, Kathy Bible, and Arne Vanstrum. (Composite Exhibit 4)

As to file 04-02267.  This flyer, in substantially the same form, has been previously approved by Joy Bruner, (see letter dated April 25, 2005 (Exhibit 5), with the exception of the use of my logo, which has subsequently been approved by the Florida Supreme Court, case number SC 04-1661. Accordingly, that should be the end of it, unless the rules provides for Ms. Tarbert to have appellate authority over another staff member, which she does not.

Nonetheless, I will argue as if she has such authority, in an overabundance of caution.

1.  From $5.00, non - moving, From 69.95, moving....To my knowledge, of all the firms advertising from 5.00, which I know have been approved, (see Jason Diamond) , I am the only firm that distinguishes moving and non moving, and lists BOTH prices to AVOID any confusion.   Further, be advised that my price  list has 64 non moving violations, and that we will represent clients on  33 of  those types of violations for $5, no strings

**KENDALL**
11776 N. Kendall Dr. 2
Miami, FL 33183
Phone: (305) 279-5101
Fax: (305) 274-9141
Email:
kendall@theticketclinic.com

**HIALEAH**
1165 West 49th St., Suite 202
Hialeah, FL 33012
Phone: (305) 824-3630
Fax: (305) 824-3208
Email:
hialeah@theticketclinic.com

**NORTH MIAMI BEACH**
18500 NE 5th Ave, 2nd Floor
N. Miami Beach, FL 33179
Phone: (305) 653-9993
Fax: (305) 653-7077
Email:
nmb@theticketclinic.com

**FT. LAUDERDALE**
1580 South Federal Highway
Ft Lauderdale, FL 33316
Phone: (954) 522-5926
Fax: (954) 522-5197
Email:
broward@theticketclinic.com

**PLANTATION**
320 S. University Drive
Plantation, FL 33324
Phone (954) 382-8880
Fax (954) 382-8864
Email:
plantation@theticketclinic.com

**DELRAY BEACH**
4665 W. Atlantic Ave, Suite C
Delray Beach, FL 33445
Phone (561) 381-5101
Fax (561) 381-5104
Email:
delray@theticketclinic.com

**WEST PALM BEACH**
2219 Belvedere Rd.
West Palm Beach, FL 33406
Phone (561) 478-1256
Fax (561) 478-1210
Email:
palmbeach@theticketclinic.com

**ORLANDO**
648 W. Colonial Drive, 1st Floor
Orlando, FL 32804
Phone (407) 254-0022
Fax (407) 254-0031
Email:
orlando@theticketclinic.com



04-02267, 06-02399

attached.  Accordingly,   there is  nothing misleading or deceptive about the prices.

2.   As to the money back guarantee, others have been approved for such nonsensical guarantees as "no hassles"  see Rabbani, file number 06-01693, attached, but once again, Ms. Tarbert has singled me out .  In an overabundance of caution, my guarantee states, "Guarantee is limited, some restrictions apply, call for details"  Ms. Tarbert cites rule 4- 7.2(c) (1), which provides that an ad may not be deceptive or misleading.  I have provided clear and unequivocal language that the guarantee is limited and restrictions apply. In plain language, what is misleading about that?  Further she cites subsection (c) (10), the legibility requirement. The type is clearly legible, and in fact also complies with the  former rule that requires type to be at least ¼ the size of the largest type.  I am confident that no Court would find this language misleading, and accordingly, the principles of Central Hudson apply. To determine if language in an ad is misleading or deceptive, a reasonable person standard is applied.  Looking at federal law, the FTC requires a  showing of "potential deception of consumers acting reasonably in the circumstances,"  or  "what a person of ordinary intelligence would conclude"  Freeman v Time, 68 F3rd 285,  (9th Cir, 1995). Given the "Limitations and restrictions apply" language of my ad, it cannot  be argued that any reasonable person would assume the guarantee applies under all circumstances.  Further, there is no evidence that the language is "inherently misleading,   and is therefore protected speech subject to the subject to prongs  of Central Hudson,   Ibanez v Fla Dept of Bus. And Prof Reg. 512 US 136  (1994).

It has been held that an ad providing free travel insurance, without listing its limitations,  and without even STATING that restrictions apply, as we do in the   instant ad, was NOT  misleading. Applying the "reasonable man" standard,   the  Court said "it is not reasonable  for a person to determine what type  of insurance is provided by the eight words in this advertisement".  Smith v.Mellon 957 F. 2d 856 (11th Cir 1992)...

Ms. Tarbert's unjustified opinion based on her "common sense" concerns are inappropriate here, and in fact, have been consistently overturned  Gold v Fla Bar, Mason v Fla. Bar.  In fact, "rote invocation of the words 'potentially misleading' does not relieve the State burden to demonstrate that the harms it recites are real



File no.:04-02267, 06-02399

Mason v Fla. Bar, 208 F3 d 952, at 958.

Accordingly, where it is clearly stated that the money back guarantee is limited, and restrictions apply, No reasonable person could conclude otherwise, and the ad is not misleading.

Further, the Guarantee language has not only been approved by other staff members, it was in fact *RECOMMENDED* by Cynthia Booth. In comparing inconsistencies in different yellow Page ads, she suggested I use the same guarantee language in all of them, to wit: "Money back guarantee, in most cases, non criminal infractions only" file 04-02267, See also File 04-01971, Kathy Bible approved "money back Guarantee, in most cases, non criminal infraction", and file no 04-02267, letter dated 05/17/04, by Arne Vanstrum, and Kathy Bible, file number 04-01971, where she approved "money back guarantee, most cases, non criminal infractions, call for details" it is obvious one hand has no idea what the other is doing, but I should have the right to *RELY* on opinions given by staff, and not have them *REVERSED* by another!!

I have made every effort to comply with your rules, but Ms. Tarbert has made it nigh impossible. Remember, you are dealing with protected *CONSTITUTIONAL* rights, and as The Florida Bar, you should be interested in protecting them, not violating them.

Hopefully, your input will resolve this matter.

Respectfully submitted,

Mark Gold



**DADE**
**2298 South Dixie Highway**
**Miami, FL 33133**
**Phone: (305) 858-9390**
**Fax:   (305) 858-9490**
**Email:**
**dade@theticketclinic.com**

January 22, 2007

John F. Harkness, Jr.
Executive Director
The Florida Bar
651 E. Jefferson Street
Tallahassee, Florida 32399

ATTACHMENT / EXHIBIT

Dear Mr. Harkness:

As a member of the Florida Bar, I expect to be treated fairly and equally by staff on the issues surrounding approval of advertising.

Regarding review of proposed advertisements, you have a system in place to insure this occurs. These steps are outlined in your Procedures Manual, (*attached as ex. 1*), under the headline "Distributing Ad Files and Adding to the Tracking Records"

Specifically, when an ad is submitted for review, the ad is randomly assigned to a staff attorney according to an "Ad File Distribution List." *See number 3, ex 1.*

Next, if the ad is revised, it is to be sent to "The attorney who reviewed the original ad" *See, number 3, ex 2,* Titled: "Processing "Non Cash" or "Existing Ad Files", and "Procedures, Advertising", *ex 3,* paragraph 2, page 2, which states: *"when support staff receives a revision of a previously filed ad, they assign the file to the attorney who performed the initial review (if the attorney is still here) and indicate Revision on the yellow cover sheet".*

Although this is the written and published policy of The Florida Bar, I was shocked to learn that Ms. Elizabeth Clark Tarbert, Staff Counsel for The Florida Bar, has determined her own procedures, and demanded in writing that all my files be reviewed by her. According to Ms. Tarbert, this includes even those *already reviewed* by another staff member. *See e-mail dated 6/16/2006, attached as Ex 4*, which states:

"FYI, please assign ALL Mark Gold ads to Elizabeth even if they are revisions handled by another staff attorney. See me if questions."

To date she has reviewed, *and reversed* opinions already issued by Florida Bar Staff Members Joy Bruner, Cynthia Booth, and Barbara Moore.



In fact, in reversing Joy Bruner's prior opinions, she stated " I understand most of these issues were not addressed in bar staff's letters to you regarding files 06-00379 and 05-01354 regarding similar advertisements. I apologize for Ms. Bruner's failure to point out those issues" June 16, 2006 letter, file number 06-02399.

Ms. Tarbert's actions are a direct violation of The Florida Bar's written procedures, a violation of my Constitutional right to equal protection under the law, and evidences blatant selective enforcement.  As an arm of the Florida Supreme Court, the Bar should apply its rules and procedures evenly and fairly.

Request is hereby made that all my files be removed from Ms. Tarbert, and placed in the random assignment pool, as required by the rules in existence for all Members of The Florida Bar, and further, that any revisions of files previously reviewed by staff be given to the original reviewing staff member as required by your procedures, and that they issue opinions consistent with those previously given by them.

Now that the advertising rules provide that an approval is an absolute defense to a Bar Grievance, I must insist that I be treated equally and in accordance with your procedures.

Thank you for your attention to this matter.

Very truly yours,

Mark S. Gold

cc Kenneth Marvin
   J. Anthony Boggs — F.ed ✗
   Henry M. Coxe, III, President
   Francisco R. Angones, President-elect
   Alan Kluger, Esq., attorney for Mark Gold
   Brian Tannebaum, Esq attorney for mark Gold
   Tim Chinaris Esq.  attorney for Mark Gold
   Bruce Rogow, Esq.

**Name_of_Procedure:**[ Distributing Ad Files & Adding to the Tracking Records
]

    **Type_of_Procedure:**[ Advertising

**Time/Task_Allocation_No.:**[ File Review / Prep 222

 **Creator:**[ Rebecca Burke            ]    **Date:**[ 6/9/99            ]

     **Staff_Responsible:**[ Administrative Secretary I

]

**Description:**[ Once the advertising files have been opened, they must be distributed to the attorneys for review and recorded for tracking purposes. This helps to ensure that all advertising deadlines are met.
]

**Procedures:**[

After the Secretary is done entering the ad file information into the AS400 system, she gives the new ad files and all backup documentation to the Administrative Secretary for distribution to the attorneys.


1.    Review the advertising file cover sheets for accuracy. Compare the information on the cover sheet to the backup documentation. Make any necessary changes or corrections.


2.    Complete the top of the "Advertising Review Checklist" with the File Number, the Date Due and the name of the attorney who you are assigning the file to.


3.    To determine who you are assigning the file to, check the Ad File Distribution List to see who is due to receive the next file.


4.    Enter Asksam - Advertising - Tracking Records - Add a File

This will take you to an entry form that looks like this:

File No.                      Correspondence Type
Date Received           Date Due Out
Date Assigned           Assigned to
Date Letter Sent
Comment

Key in the ad File Number, tab to the Correspondence Type field and choose the type of correspondence from the picklist. Key in the Date Received, the Date Due Out, the Date Assigned and choose an attorney from the pick list in the "Assigned to" field.

5.    If the ad file is complete, put the file in the attorney's cubby to review.
       If the ad file is incomplete, put the file in the "To Be Typed" box with a "sticky note" attached as to what backup documentation is needed and who should sign the letter.
]

*EX 1*

**Name_of_Procedure:** Processing "Non-cash" or "Existing" Ad Files
Date: 6/9/99

**Type_of_Procedure:** Advertising
**Time/Task_Allocation_No.:** File Review & Preparation 222
**Staff_Responsible:** Secretary
**Creator:** Rebecca Burke

**Description:** The Ethics & Advertising Dept. receives correspondence and information pertaining to existing ad files. The information is processed according to the reason for the additional submission. This information/submission is processed in through support staff and legal staff for review and to maintain accurate records.

**Procedures:**

1. The advertising mail is receipted in according to the mail procedures. Complete an out card with the receipt date and the reason you are pulling the file.

2. Determine why we received the material/information and process it accordingly. Check the cover sheet to see who reviewed the original submission. See below for the possible correspondence types and individual handling procedures.

3. Complete the Advertising Review Checklist with the following information:

To:            The attorney who reviewed the original ad;
Date Due:      The date a response is due out (15 days from date of receipt);
File No.       The ad file number;

If the ad was submitted by an ad agency, write in the attorney or firm name in the cc: line. Check the appropriate line for the type of correspondence in the upper right corner.

4. Pull out the old cover sheet and replace it with the updated cover sheet by stapling it to the inside left cover of the physical ad file.

5. Rubberband the correspondence and the Advertising Review Checklist around the ad file.

Correspondence Types

**A.** **Revisions** - The material submitted by the advertising attorney is a revision of a previously filed ad.

**B.** **Completions** - The material submitted makes the ad file "complete" according to the requirements of the rules - transcript, ad, envelope and fee.

Verify that the ad is now a complete filing by checking the codes in the incomplete line against

*EX 2*

Name_of_Procedure:[ Advertising Files
]                                        Date:[   7/99        ]
        Type_of_Procedure:[  Advertising
Time/Task_Allocation_No.:[  Attorneys File Review/Preparation 222 & Correspondence
54 (Adv.)
]

        Staff_Responsible:[  Attorneys, Legal Assistant
                Creator:[  Barbara Moore & Lisa Pease

Description:[   Pursuant to Rule 4-7.7, Rules Regulating The Florida Bar, all non-exempt
lawyer advertisements, including direct mail communications and e-mail, must be filed with The
Florida Bar to determine compliance with the rules governing lawyer advertising.  The Standing
Committee on Advertising has been charged by the Supreme Court of Florida with the
responsibility of evaluating advertisements.  Due to the high volume of advertisements filed by
Florida lawyers, the Standing Committee on Advertising ("SCA") has delegated the initial
review function to the staff of the Ethics & Advertising Department of The Florida Bar.
]
Procedures:[

Support staff receives and processes lawyer advertising submissions, including filing fees, and
sets up a file folder for each submission. (See Adding New Advertising Files.)  The files are
given to the Legal Assistant who assigns an attorney to each ad file and places the file in the
cubby of the appropriate attorney.

The attorney sorts ad files by due date and begins reviewing the file due out earliest.  A written
response must be provided within 15 days from the date of receipt of the filing.  The attorney
reviews the ad to determine if it complies with the Rules Regulating The Florida Bar and prior
decisions of the Standing Committee on Advertising (SCA).  Prior SCA decisions are
maintained in AskSam and can be found, from the Main Menu, by choosing Research and then
SCA Decisions.  If an attorney needs assistance in determining compliance, he or she can bring
the ad in question to an ad meeting, usually held from 8:00 - 9:00 a.m. on Monday,
Wednesday, and Friday mornings.

After review, the attorney fills out the yellow Advertising Review Checklist sheet (copy of
Checklist is attached).  If an ad has multiple violations, the attorney should highlight each
different type violation with a different color highlighter and use corresponding colors to note
violations on the yellow Checklist.  If the attorney seeks guidance from the SCA before issuing
an advisory opinion, the attorney marks "Request for Guidance" on the Checklist.  The attorney
then fills out the cover sheet located on the inside cover of the ad file folder (copy of Cover
Sheet is attached) and places the file in the "To be Typed" cubby.  Support staff drafts the
appropriate letter and saves it on the computer at "h:\adfiles\" followed by the file number.wpd.
For example: "h:adfiles\01-01895.wpd" or "h:adfiles\01-1895 request for guidance.wpd". Staff
then returns the file to the lawyer's cubby.  The attorney finalizes the letter, verifies inclusion of
any attachments, and places it in the "To be Mailed" cubby.  If it is after 12:00 p.m., the letter
should be dated for the next business day.

EX 3 pg 1

If the attorney is seeking a Request for Guidance, the attorney also prepares a summary of the issue(s) to be presented to the Committee. The format for the summary is at "h:\adv\sca-meet\ request\sample." The completed summary should be saved temporarily at "h:\adv\sca-meet\request\" followed by the ad file number. For example, the summary prepared for a request for guidance for ad file number 99-00206 should be saved as "h:\adv\sca-meet\ request\99-00206." The attorney copies and attaches to the summary any relevant authorities, including past SCA decisions on the issue. The attorney places the summary materials in the file folder. The attorney attaches a note to the finalized letter instructing support staff to place the file in the Appeals rack after the ad opinion letter has been mailed. On the outside of the file folder, the attorney writes, "SCA", the date of the next SCA meeting, and "Request for Guidance." These summaries will later be included as back-up material for the next SCA Agenda. (See Procedure for SCA Agendas.) The attorney should also have a copy of the summary placed in the file for future reference.

When support staff receives a revision of a previously filed ad, they assign the file to the attorney who performed the initial review (if the attorney is still here) and indicate Revision on the yellow cover sheet. Support staff should seek the advice of an attorney if uncertain whether the ad is a revision of a prior ad or a new ad. If non-exempt information (any information beyond that set forth in Rule 4-7.2(c)(11)) has been added, it will be treated as a new ad, requiring an additional filing fee, and staff will open a new file.

When support staff receives a letter requesting an appeal of an advisory opinion, they draft an appeal letter indicating that the ad will be placed on the next SCA agenda and give the date of the next SCA meeting, attach it to the appropriate file folder, and place the folder in the cubby of the attorney who initially reviewed the ad. These letters are saved on the computer at: "h:\adfiles\" followed by the ad file number and "sca", indicating the file is going to be placed on the next SCA Agenda. The attorney confirms that an appeal has been requested, signs the letter, and marks the outside of the file "SCA" and the next meeting date. The attorney then puts the file in the To Be Mailed cubby, with a post-it note attached instructing staff to place the file in the Appeals rack after the letter is mailed.

If the appeal is to the Board Review Committee, support staff draft an appeal letter indicating that the ad will be placed on the next BRC agenda and give the date of the next BRC meeting, attaches it to the appropriate file folder, and places the folder in the cubby of the Ethics Counsel. These letters are saved on the computer at: "h:\adfiles\" followed by the ad file number and "brc," indicating the file is going to be placed on the next BRC Agenda. The Ethics Counsel confirms that an appeal has been requested, signs the letter, and marks the outside of the file "BRC" and the next meeting date. The Ethics Counsel then puts the file in the To Be Mailed cubby, with a post-it note attached instructing staff to return the file to Ethics Counsel after the letter is mailed. ]

EX 3 pg 2



Donna E Hostutler/The Florida Bar

06/16/2006 09:38 AM

To   Christina D. Sykes/The Florida Bar@FLABAR, Pamela R Brown/The Florida Bar@FLABAR, Amanda E Grambling/The Florida Bar@FLABAR

cc   Elizabeth Tarbert/The Florida Bar@FLABAR

bcc

Subject   Mark Gold ads

FYI, please assign ALL Mark Gold ads to Elizabeth even if they are revisions handled by another staff attorney. See me if questions.

Donna E. Hostutler
Legal Assistant
Ethics and Advertising
(800) 342-8060, ext. 5778
(850) 561-5778
(850) 561-5750 (Fax)

*EX 4*

**07-20702**

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

GOLD, MARK S.

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Kluger, Peretz, Kaplan & Berlin, P.L. c/o Alan J. Kluger/Dianne Fischer
201 South Biscayne Boulevard, 17th Floor
Miami, Florida 33131, Telephone: 305-379-9000

## DEFENDANTS

THE FLORIDA BAR and TARBERT, ELIZABETH C.

County of Residence of First Listed Defendant   Leon
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVE

**CIV-LENARD**

Attorneys (If Known)

**TORRES**

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*MIAMI- 07CV20702-Lenard / Torres*

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 810 Selective Service |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | Exchange |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Under Equal Access |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | to Justice |
| | Employment | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | State Statutes |
| | Other | | | | |
| | ☑ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☐ YES ☐ NO

JUDGE                          DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

42 USC 1983

LENGTH OF TRIAL via **3** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   3·16·07

FOR OFFICE USE ONLY

AMOUNT $350.00   RECEIPT # 956701   IFP

03/16/07